UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAC ESTRADA, | No. 2: 11-cv-2871 KJN P |
| Petitioner, | |
| v. | ORDER |
| MICHAEL STRAINER, | |
| Respondent. | |

Introduction

Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties consented to the jurisdiction of the undersigned. (ECF Nos. 8, 10.)

Petitioner challenges his 2009 conviction for dissuading a witness (Cal. Penal Code § 136.1(a)), with enhancements for committing the crime for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)) and for being an active participant in a criminal street gang (Cal. Penal Code § 186.22(a)). Petitioner is serving a sentence of 7 years to life.

On December 18, 2014, a hearing was held before the undersigned regarding respondent's motion to dismiss. (ECF No. 33.) Respondent moves to dismiss on the grounds that not all of petitioner's claims are exhausted. Jennifer M. Sheetz appeared on behalf of petitioner. David Andrew Eldridge appeared on behalf of respondent. For the reasons stated herein, the

undersigned finds that petitioner has filed a mixed petition. However, respondent's motion to dismiss is denied without prejudice, and petitioner is granted thirty days to file a motion to stay pending exhaustion of additional claims in state court. If petitioner does not file a motion to stay within this time, the undersigned will grant respondent's motion to dismiss.

Petitioner's Claims

This action is proceeding on the first amended petition filed May 9, 2014. (ECF No. 31.) Petitioner raises four claims: 1) trial counsel was ineffective for failing to file a motion to suppress (id. at 13); 2) trial counsel was ineffective for failing to challenge juror 5 for cause (id. at 13-14); 3) there was insufficient evidence to support petitioner's conviction for dissuading a witness (id. at 14); and 4) there was insufficient evidence of petitioner's active participation in a street gang (id.).

Factual Background

The facts underlying petitioner's conviction are set forth in the opinion of the California Court of Appeal:

> FACTS
>
> In July 2008, a group of four teenagers beat the victim. He knew two of them by sight from his neighborhood, and did not have any history of animosity with them. He knew one of them was involved in a gang active in the neighborhood. He was scheduled to testify against them in a juvenile court proceeding on August 14, 2010.
>
> At some point between the attack and the scheduled court proceeding, the victim bought some cigarettes at a market and was going to walk to his girlfriend's home around the corner. Two men intercepted him at the corner. One of them asked him to wait and talk with them for a minute. They flanked him as they walked with him across the street to the front of a duplex where defendant lived with his girlfriend and children.
>
> The speaker made a reference to the previous attack on the victim and the imminent juvenile court date, and said the juveniles should not be going back to court. The speaker said that what happened in the street should stay in the street. He said, if the victim stayed out of court, "the whole incident with [the four guys] would be dropped and everything would be squashed" without any further repercussions. However, he said, "[I]f [the victim] went to court, [he] didn't know what would happen." The victim identified defendant as the spokesman for the duo. FN3 His silent partner was tall and muscular. As he had with two of the four juvenile assailants, the victim had previously seen defendant around the

> neighborhood (and was aware that he lived in the duplex), and there had not been any past conflicts with him. The victim had not previously associated defendant with the attackers or the neighborhood gang, but it was clear to him that defendant was making reference to the attack on the victim and the imminent court date involving it. The victim saw a tattoo on defendant that he associated with the gang that was active in the neighborhood.
>
> FN3. Defendant does not challenge the sufficiency of the victim's identification of him. We therefore omit any disputes in the testimony regarding this issue, or regarding his defense of alibi.
>
> The victim "looked at both of them and said yeah. Because I really didn't want to sit there and tell them no." The victim felt threatened because the two men had approached him in such a way that he did not feel he had any choice about talking to them, and then they walked on either side of him. The victim believed that there would be physical action against him "[i]f not on that day, later...." The two men then went into defendant's duplex.
>
> The victim could not recall the exact date of the incident. He was certain it had happened in the late afternoon, and it was likely a weekday because he did not recall any children running around.
>
> He first reported the incident to an officer who had come to bring him to the juvenile court on August 14 after he failed to appear. He told the officer that defendant's conduct made him think that defendant was a "shot caller" for the gang. The victim told the officer he was reluctant to testify as a result, and testified he was also reluctant to testify in the present criminal proceedings. He was aware that people who testified against gangs got beaten. When the officer appeared at the hearing with the victim, the two juveniles entered pleas.
>
> An officer testified that one of the juveniles was a self-admitted member of the gang active in the neighborhood; another was an active gang member as well. He also offered the opinion that defendant was a member of the gang, based on his observations over the course of more than 10 years of things such as defendant's "[t]attoos. [His] history with the Ripon Police Department. The attire he wears. His haircut. And the way he presents himself and who he hangs around with on the streets." The officer was aware that defendant associated with at least one of the juveniles who attacked the victim. Defendant told the officer that he was not an active gang member in August 2008, and the officer could not document any evidence of active gang membership since March 2007 other than the addition of a tattoo. The officer nonetheless believed that defendant was simply being evasive.

People v. Estrada, 2010 WL 3247866 at 1-2 (2010).

In the amended petition, petitioner states that he defended against the charges based upon misidentification with the presentation of alibi witnesses:

3

> Petitioner took the stand in his own defense. Petitioner explained that he took care of his own children during the morning while his girlfriend was at work, and then she drove him to work when she returned home. (II RT 454-455, 459, 465-466.) He acknowledged that he lived in what was considered gang territory and had gang tattoos. (II RT 461-462.) Petitioner denied current gang membership, noting he had gotten the tattoos in 1998 and 1999, when he was an active gang member. (II RT at 461-463.) Petitioner also denied involvement in the commitment offense. (RT 465.)
>
> Petitioner's parole officer, Steven Wheeler, testified that Petitioner was under his supervision from March 2007, through August 18, 2008, and he observed no evidence of gang activity or affiliation, nor parole violations during that period. (II RT 377.)
>
> Sabrina Scudder, a coworker at Hot Services, testified on Petitioner's behalf regarding his work habits. (II RT 441.) She noted that Petitioner was a good, responsible worker who always showed up for work prior to her shift, which started at 1:30 and 2:00 p.m. (II RT 443-444.) Scudder acknowledged that she had seen Petitioner's tattoos, but noted that he never spoke about gangs or engaged in any gang related behavior. (II RT 444-445.)
>
> In addition, Dan Grabowski, part-owner of Hot Services, where Petitioner worked at the time of the incident, testified as to Petitioner's employment status and work habits. (II RT 397.) Grabowski presented the employee time card records which showed that Petitioner's time card was "swiped" at approximately 1:00 p.m. every weekday for the month prior to the incident. (II RT 397-398, 403, 406.) Grabowski explained that it was virtually impossible for another person to "swipe" another employee's time card, and it was highly regulated and he and the other supervisors were the only persons present when the time cards were swiped. (II RT 405.)
>
> Petitioner's girlfriend, Eneida Guevera, verified Petitioner's weekday routine. Guevera explained that she drove Petitioner to work every day during the week at approximately 12:30 or 12:45 p.m. and picked him up in the evening, after his shift was over, because he did not drive. (II RT 512-513.)

ECF No. 31 at 23-24.

Procedural Background

On direct appeal, petitioner raised one of the claims now raised in the amended petition: insufficient evidence to support his conviction for dissuading a witness. (Respondent's Lodged Document 8, Petition for Review filed in California Supreme Court). The California Supreme Court denied this petition without comment or citation. (Respondent's Lodged Document 9.)

////

Petitioner filed one other post-conviction pleading in state court: a habeas corpus petition in the San Joaquin County Superior Court. (Respondent's Lodged Document 10.) That petition raised the following claims: 1) the procedure resulting in the victim's identification of petitioner was unduly suggestive; 2) insufficient evidence to support petitioner's conviction for active participation in a street gang; and 3) insufficient evidence to support petitioner's conviction for dissuading a witness. (ECF No. 13 at 18, opinion of Superior Court). The Superior Court denied this petition for the reasons stated herein:

> Petitioner's latter claims relating to the sufficiency of the evidence and reasonable doubt fail because they are not within the scope of the habeas corpus remedy. Sufficiency of the evidence claims are not cognizable on habeas corpus. In re Lindley (1947) 29 Cal.2d 709, 722-723. Habeas corpus is not available to re-litigate factual matters determined adversely to petitioner or to weigh the evidence supporting the judgment. In re Dixon (1953) 41 Cal.2d 756, 760; In re La Due (1911) 161 Cal.732, 635-636.
>
> Petitioner's claim relating to the identification procedure also fails because it was not raised on appeal. According to the petition, petitioner did not raise the identification issue on appeal because it was outside the record and because his counsel during the appeal was ineffective.
>
> The identification procedure, however, was within the record on appeal. Indeed, in the Court of Appeal's decision, it noted that "[petitioner] does not challenge the sufficiency of the victim's identification of him. We therefore omit any disputes in the testimony regarding this issue, or regarding his defense of alibi." (Fn. 3.) Accordingly, petitioner does not demonstrate any exception to the general rule that a court will dismiss a habeas petition if it alleges an issue that could have been, but was not raised, on direct appeal. In re Harris (1993) 5 Cal.4th 813, 829; In re Dixon (1953) 41 Cal.2d 756, 759.
>
> Moreover, petitioner's conclusory allegations are insufficient to demonstrate a prima facie showing of ineffective assistance of counsel. Strickland v. Washington (1984) 466 U.S. 668, 690; People v. Jackson (1980) 28 Cal.3d 264, 288-293. Petitioner has not set forth any facts showing that his appellate counsel failed to investigate either the facts or the law in the manner required of a reasonably competent, diligent and conscientious advocate. People v. Jackson, supra, 28 Cal.3d at 288.
>
> Based on the foregoing, the petition is denied.

(Id.)

////

////

Legal Standard for Exhaustion

Federal courts are required to give state courts an initial opportunity to correct alleged violations of a defendant's federal rights before adjudicating a defendant's claim. Duncan v. Henry, 513 U.S. 364, 365–66 (1995). Accordingly, before filing a federal habeas petition, a petitioner has to exhaust his state remedies as to every claim raised in his federal petition. 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 522 (1982). To exhaust a claim in state court, a petitioner must fairly present it to the state's highest court. Cooper v. Neven, 641 F.3d 322, 326 (9th Cir. 2011). A federal habeas corpus petition that includes both exhausted and unexhausted claims is a mixed petition and is subject to dismissal. See Rhines v. Weber, 544 U.S. 269, 273 (2005) (explaining federal court "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims"); Jefferson v. Budge, 419 F.3d 1013, 1016 (9th Cir. 2005) (holding district court must dismiss "mixed" petition without prejudice).

Discussion

Respondent moves to dismiss the amended petition on grounds that it contains unexhausted claims. The only claim presented to the California Supreme Court is petitioner's claim alleging insufficient evidence to support petitioner's conviction for dissuading a witness.

Petitioner argues that his three unexhausted claims fall within the "technical exhaustion" doctrine. The undersigned addresses that argument herein.

*Legal Standards re: Technical Exhaustion*

State remedies are technically exhausted, but not properly exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies available now. O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). Under these circumstances, the claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 731 (1991).

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result

in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). To show "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. Murray, 477 U.S. at 495–96.

*Analysis*

Petitioner argues that no state court remedies remain available because if he returns to state court, his claims will be denied as untimely. Petitioner also argues that his claim alleging insufficient evidence to support his conviction for active participation in a street gang will be denied on the grounds that it should have been raised on appeal, as found by the Superior Court. For these reasons, petitioner argues that his claims are technically exhausted.

For the following reasons, the undersigned finds that petitioner's claims are not technically exhausted.

In In re Reno, 55 Cal.4th 428, 460–61 (2012), the California Supreme Court summarized the applicable California law regarding timely habeas petitions as follows:

> Our rules establish a three-level analysis for assessing whether claims in a petition for a writ of habeas corpus have been timely filed. First, a claim must be presented without substantial delay. Second, if a petitioner raises a claim after a substantial delay, we will nevertheless consider it on its merits if the petitioner can demonstrate good cause for the delay. Third, we will consider the merits of a claim presented after a substantial delay without good cause if it falls under one of four narrow exceptions: "(i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (iii) that the death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would

> have imposed a sentence of death; or (iv) that the petitioner was convicted or sentenced under an invalid statute." (In re Robbins, supra, 18 Cal.4th at pp. 780–781.) The petitioner bears the burden to plead and then prove all of the relevant allegations. (Ibid.)
>
> The United States Supreme Court recently, and accurately, described the law applicable to habeas corpus petitions in California: "While most States set determinate time limits for collateral relief applications, in California, neither statute nor rule of court does so. Instead, California courts 'appl[y] a general "reasonableness" standard' to judge whether a habeas petition is timely filed. Carey v. Saffold, 536 U.S. 214, 222 (2002). The basic instruction provided by the California Supreme Court is simply that 'a [habeas] petition should be filed as promptly as the circumstances allow....'" (Walker v. Martin, supra, 562 U.S. at p. –––, 131 S.Ct. at p. 1125.) "A prisoner must seek habeas relief without 'substantial delay,' [citations], as 'measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim,' [citation]." (Ibid.; see also In re Robbins, supra, 18 Cal.4th at p. 780) ["Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim."].)

In re Reno, 55 Cal.4th at 460–61.

In the instant case, the California Supreme Court denied petitioner's petition for review on October 27, 2010, and the Superior Court denied his state habeas petition on February 16, 2011. Because almost four years has passed since the Superior Court issued its decision, and petitioner has not shown good cause for this delay, it is very likely that a state petition raising the unexhausted claims would be found untimely. See Velasquez v. Kirkland, 639 F.3d 964, 967-68 (9th Cir. 2011) (the thirty-day to sixty-day period is presumptively reasonable.)

It is also likely that petitioner's unexhausted insufficient evidence claim would be denied by the California Supreme Court on the grounds that it should have been raised on appeal, i.e., the same grounds on which the Superior Court denied this claim.

However, as noted above, California recognizes an actual innocence exception to untimely claims. California courts also recognize an actual innocence exception to claims that should have been raised on appeal. See In re Reno, 55 Cal.4th at 473-74. In the amended petition, petition raises a claim of actual innocence in support of his argument that his technically exhausted claims meet the fundamental fairness exception for procedural default.

8

In support of his claim of actual innocence, petitioner has presented three exhibits which allegedly demonstrate third-party culpability. Exhibit B is a declaration by petitioner's trial counsel dated May 7, 2014, which states, in relevant part,

> 2. My memory of the exact dates, names and certain details has faded over the past five years, but I remember the case in general. From the start of the representation, I realize that the defense case was really about the initial misidentification of Isac Estrada. The misidentification was partly due to the initial suggestive law enforcement identification of Estrada to the victim, Jennings Jordan. I do not remember the specifics of in limine prior to trial, or if I discussed suppressing the identification based upon the procedure. However, I have always believed that Isac Estrada was misidentified from the start.
>
> 3. During the investigation for trial, we searched for witnesses to the incident outside the market, to no avail.
>
> 4. In early 2011, two years after the trial, I was given information about a potential witness who was willing to speak with me. The witness was Jose Luna, and he was the stepfather to Luis Machuka. While I was no longer appointed to represent Estrada, I felt compelled to conduct the interview.
>
> 5. After arranging the meeting, I contacted private investigator, Craig Williams, and asked him to accompany me. He agreed to accompany me and record the interview on a pro bono basis.
>
> 6. On April 1, 2011, I interviewed Jose Luna along with Craig Williams at Crows Landing Rd. in Modesto, CA. With Mr. Luna's permission, the interview was recorded.
>
> 7. During the course of the interview, Mr. Luna indicated to me that he was witness to the underlying incident in 2009. Mr. Luna identified his brother-in-law, Juan Medina, as the individual that was with him during the incident and the one who approached Jennings Jordan. Mr. Luna stated that Isac Estrada was not with him during the incident.
>
> 8. As a trial attorney, I did not feel comfortable trying to submit the evidence of the interview to the court in a post-conviction brief. I tried to get a post-conviction attorney to agree to submit the evidence to the court. In the end, I sent the interview to the Innocence Project. I spoke with several attorneys at the project and they expressed interest in the case.

(ECF No. 31-2 at 1-2.)

While the state courts may very well find petitioner's claims untimely and improperly raised on habeas, the undersigned finds that state court remedies are still available to petitioner because he could argue actual innocence as an exception to these bars. If petitioner can establish

actual innocence, the California courts should have the first opportunity to consider his claims. Accordingly, the undersigned finds that petitioner's claims are not technically exhausted because state court remedies are potentially still available to petitioner.[1]

Because the petition contains exhausted and unexhausted claims, the undersigned will consider a motion to stay by petitioner. By granting petitioner an opportunity to file a motion to stay, the undersigned makes no finding regarding whether he would grant the motion. A motion to stay must meet the standards set forth in either Rhines v. Weber, 544 U.S. 269 (2005), or Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002).[2] Accordingly, respondent's motion to dismiss is denied without prejudice. If petitioner does not file a motion to stay, the undersigned will order this action dismissed on grounds that the amended petition contains unexhausted claims.

Accordingly, IT IS HEREBY ORDERED that respondent's motion to dismiss (ECF No. 33) is denied without prejudice; petitioner is granted thirty days to file a motion to stay this action pending exhaustion of the unexhausted claims.

Dated: January 8, 2015

Es2871.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[1] In determining that petitioner could argue actual innocence in state court, the undersigned makes no representation or finding regarding whether petitioner's actual innocence claim is sufficient or needs to be more fully developed.

[2] The undersigned has considered respondent's objection to granting petitioner's request to file a motion to stay.