UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAC ESTRADA, | No. 2:11-cv-2871 KJN P |
| Petitioner, | |
| v. | ORDER |
| MICHAEL STRAINER, | |
| Respondent. | |

Petitioner is a state prisoner, proceeding through counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned for all purposes. See 28 U.S.C. § 636(c); Local Rule 305(a).

Respondent previously moved to dismiss the operative First Amended Petition, contending that petitioner had failed to exhaust all of his claims for relief at the state level. By order filed January 8, 2015, the court denied respondent's motion to dismiss and granted petitioner leave to file a motion for a stay of this action while he exhausts the unexhausted claims. On February 7, 2015, petitioner filed a motion for stay. (ECF No. 44.) Respondent filed an opposition (ECF No. 45), and petitioner filed a reply (ECF No. 46). For the reasons set forth below, the court grants petitioner's motion for stay.

////

////

I. Background

   A. Factual Background

The facts underlying petitioner's conviction are set forth in an opinion of the California Court of Appeal which addresses petitioner's appeal:

> FACTS
>
> In July 2008, a group of four teenagers beat the victim. He knew two of them by sight from his neighborhood, and did not have any history of animosity with them. He knew one of them was involved in a gang active in the neighborhood. He was scheduled to testify against them in a juvenile court proceeding on August 14, 2010.
>
> At some point between the attack and the scheduled court proceeding, the victim bought some cigarettes at a market and was going to walk to his girlfriend's home around the corner. Two men intercepted him at the corner. One of them asked him to wait and talk with them for a minute. They flanked him as they walked with him across the street to the front of a duplex where defendant lived with his girlfriend and children.
>
> The speaker made a reference to the previous attack on the victim and the imminent juvenile court date, and said the juveniles should not be going back to court. The speaker said that what happened in the street should stay in the street. He said, if the victim stayed out of court, "the whole incident with [the four guys] would be dropped and everything would be squashed" without any further repercussions. However, he said, "[I]f [the victim] went to court, [he] didn't know what would happen." The victim identified defendant as the spokesman for the duo. His silent partner was tall and muscular. As he had with two of the four juvenile assailants, the victim had previously seen defendant around the neighborhood (and was aware that he lived in the duplex), and there had not been any past conflicts with him. The victim had not previously associated defendant with the attackers or the neighborhood gang, but it was clear to him that defendant was making reference to the attack on the victim and the imminent court date involving it. The victim saw a tattoo on defendant that he associated with the gang that was active in the neighborhood.
>
> The victim "looked at both of them and said yeah. Because I really didn't want to sit there and tell them no." The victim felt threatened because the two men had approached him in such a way that he did not feel he had any choice about talking to them, and then they walked on either side of him. The victim believed that there would be physical action against him "[i]f not on that day, later . . . ." The two men then went into defendant's duplex.
>
> The victim could not recall the exact date of the incident. He was certain it had happened in the late afternoon, and it was likely a weekday because he did not recall any children running around.

> He first reported the incident to an officer who had come to bring him to the juvenile court on August 14 after he failed to appear. He told the officer that defendant's conduct made him think that defendant was a "shot caller" for the gang. The victim told the officer he was reluctant to testify as a result, and testified he was also reluctant to testify in the present criminal proceedings. He was aware that people who testified against gangs got beaten. When the officer appeared at the hearing with the victim, the two juveniles entered pleas.
>
> An officer testified that one of the juveniles was a self-admitted member of the gang active in the neighborhood; another was an active gang member as well. He also offered the opinion that defendant was a member of the gang, based on his observations over the course of more than 10 years of things such as defendant's "[t]attoos. [His] history with the Ripon Police Department. The attire he wears. His haircut. And the way he presents himself and who he hangs around with on the streets." The officer was aware that defendant associated with at least one of the juveniles who attacked the victim. Defendant told the officer that he was not an active gang member in August 2008, and the officer could not document any evidence of active gang membership since March 2007 other than the addition of a tattoo. The officer nonetheless believed that defendant was simply being evasive.

People v. Estrada, No. C061694, 2010 WL 3247866 at *1-2 (Aug. 18, 2010).

### B. Procedural History

On February 17, 2009, a jury convicted petitioner of the crime of dissuading a witness (Cal. Penal Code § 136.1(a)), with enhancements for committing the crime for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)) and for being an active participant in a criminal street gang (Cal. Penal Code § 186.22(a)). Petitioner was initially sentenced to a term of 7 years to life. Estrada, 2010 WL 3247866 at *1. Petitioner was represented at trial by attorney Armando Villapadua. (First Amended Petition ("FAP"), ECF No. 31 at 28.)

On April 22, 2009, petitioner filed a timely notice of appeal with the California Court of Appeal for the Third Appellate District, case no. C050173. In his appeal, petitioner raised three claims: (i) insufficient evidence to support petitioner's conviction for dissuading a witness; (ii) trial court error in failing to strike a finding regarding petitioner's prior conviction; and (iii) sentencing error. (The first of these claims is the sole claim originating from the direct appeal that is presented in the operative First Amended Petition.) On August 18, 2010, the Court of Appeal affirmed petitioner's conviction, but remanded the case to the trial court for

3

resentencing and imposition of an indeterminate life sentence of 14 years to life. Estrada, 2010 WL 3247866 at *4. On October 27, 2010, the California Supreme Court issued a summary denial of petitioner's appeal. See People v. Estrada, No. S186583. (FAP, ECF No. 13 at 17.) Petitioner was represented on direct appeal by attorney Athena Shudde. (Exh. D to FAP, ECF No. 31-4 at 1-3.)

On February 1, 2011, petitioner filed a pro se petition for writ of habeas corpus with the San Joaquin Superior Court, raising three claims: (i) insufficient evidence to support petitioner's conviction; (ii) utilization of an unduly suggestive procedure, resulting in the victim's identification of petitioner; and (iii) insufficient evidence to support petitioner's conviction for active participation in a street gang. (Order Denying Petition for Writ of Habeas Corpus, ECF No. 13 at 17-19.) On February 16, 2011, the Superior Court denied the petition, writing:

> Petitioner's latter claims relating to the sufficiency of the evidence and reasonable doubt fail because they are not within the scope of the habeas corpus remedy. Sufficiency of the evidence claims are not cognizable on habeas corpus. In re Lindley (1947) 29 Cal.2d 709, 722-723. Habeas corpus is not available to re-litigate factual matters determined adversely to petitioner or to weigh the evidence supporting the judgment. In re Dixon (1953) 41 Cal.2d 756, 760; In re La Due (1911) 161 Cal.732, 635-636.
>
> Petitioner's claim relating to the identification procedure also fails because it was not raised on appeal. According to the petition, petitioner did not raise the identification issue on appeal because it was outside the record and because his counsel during the appeal was ineffective.
>
> The identification procedure, however, was within the record on appeal. Indeed, in the Court of Appeal's decision, it noted that "[petitioner] does not challenge the sufficiency of the victim's identification of him. We therefore omit any disputes in the testimony regarding this issue, or regarding his defense of alibi." (Fn. 3.) Accordingly, petitioner does not demonstrate any exception to the general rule that a court will dismiss a habeas petition if it alleges an issue that could have been, but was not raised, on direct appeal. In re Harris (1993) 5 Cal.4th 813, 829; In re Dixon (1953) 41 Cal.2d 756, 759.
>
> Moreover, petitioner's conclusory allegations are insufficient to demonstrate a prima facie showing of ineffective assistance of counsel. Strickland v. Washington (1984) 466 U.S. 668, 690; People v. Jackson (1980) 28 Cal. 3d 264, 288-293. Petitioner has not set forth any facts showing that his appellate counsel failed to investigate either the facts or the law in the manner required of a reasonably competent, diligent and conscientious advocate. People

           v. Jackson, supra, 28 Cal.3d at 288.

           Based on the foregoing, the petition is denied.

(Id.)  Petitioner did not appeal the denial of the petition to the California Court of Appeal.

       Instead, on October 31, 2011, petitioner filed his initial petition for writ of habeas corpus with this court.  On December 9, 2013, the court appointed counsel for petitioner.  (ECF No. 23.) Subsequently, on May 9, 2014, petitioner filed his First Amended Petition.  (ECF No. 31.) Petitioner therein raised four claims: (i) insufficient evidence to support petitioner's conviction (id. at 14); (ii) ineffective assistance of trial counsel for failing to move to suppress the results of an unduly-suggestive identification procedure (id. at 13); (iii) ineffective assistance of trial counsel for failing to challenge a juror for cause (id. at 13-14); and (iv) insufficient evidence to support petitioner's conviction for active participation in a street gang (id. at 14).  As noted above, only the first of these four claims was properly exhausted in state court.

       On August 26, 2014, respondent filed a motion to dismiss the First Amended Petition on the grounds that it contains unexhausted claims.  (ECF No. 33.)  On December 18, 2014, the court held a hearing on the motion to dismiss, and subsequently issued an order denying the motion. (ECF No. 43.)  The court therein found — based on the fact California courts recognize an actual innocence exception to the bar against untimely claims and against claims that should have been raised on direct appeal — that state court remedies were potentially still available to petitioner, and therefore, that petitioner's claims were not technically exhausted.  Id. at 8 (citing In re Reno, 55 Cal. 4th at 473-74).[1]  Petitioner subsequently filed the instant motion for stay, which respondent opposes.  The parties' arguments are considered in turn below.

////

////

---

[1] According to the First Amended Petition, on April 1, 2011, petitioner's trial counsel met with an individual, one Jose Luna, who stated that he was present at the 2009 incident for which petitioner was convicted.  Luna allegedly identified the person responsible for the actions for which petitioner was convicted, and stated that petitioner was not present at the scene.  (ECF No. 31-1 at 8-9.)  These allegations, which are reinforced by exhibits attached to the FAP, may support a claim of actual innocence based on third-party culpability.  (See Jan. 8, 2015 Order, ECF No. 43 at 8-10.)

II. <u>Standard</u>

The United States Supreme Court has held that a federal district court may not entertain a petition for habeas corpus unless the petitioner has exhausted state remedies with respect to each of the claims raised. <u>Rose v. Lundy</u>, 455 U.S. 509, 515 (1982). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir. 1985), <u>cert. denied</u>, 478 U.S. 1021 (1986).

Two procedures are available to federal habeas petitioners who wish to proceed with exhausted and unexhausted claims for relief. The "<u>Kelly</u> procedure," outlined in <u>Kelly v. Small</u>, 315 F.3d 1063 (9th Cir. 2003), involves a three-step process:

> (1) petitioner amends his petition to delete any unexhausted claims, (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims, and (3) petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition.

<u>King v. Ryan</u>, 564 F.3d 1133, 1135 (9th Cir. 2009). A petitioner who proceeds under <u>Kelly</u> will be able to amend his petition with newly exhausted claims if they are timely under the statute of limitations governing the filing of federal habeas petitions. If a petitioner's newly-exhausted claims are untimely, he will be able to amend his petition to include them only if they share a "common core of operative facts" with the claims in the original federal petition. In this regard, the <u>Kelly</u> procedure, unlike the alternative procedure discussed below, is a riskier one for a habeas petitioner because it does not protect a petitioner's unexhausted claims from expiring during a stay and becoming time-barred. <u>See</u> <u>King</u>, 564 F.3d at 1140-41; <u>see also</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 172-75, (2001) (unlike the filing of a state habeas petition, the filing of a federal habeas petition does not toll the statute of limitations).

In the second procedure, under <u>Rhines</u>, a federal petition containing both exhausted and unexhausted claims may be stayed if: (1) petitioner demonstrates good cause for the failure to have first exhausted the claims in state court; (2) the claim or claims at issue are not plainly

meritless; and (3) petitioner has not been dilatory in pursuing the litigation. Id., 544 U.S. at 277-78. Under the Rhines procedure, the petitioner may proceed on a "mixed petition," i.e., one containing both exhausted and unexhausted claims; his unexhausted claims remain pending in federal court while he returns to state court to exhaust them. See King, 564 F.3d at 1140; Jackson v. Roe, 425 F.3d 654, 660 (9th Cir. 2005) ("Rhines concluded that a district court has discretion to stay a mixed petition to allow a petitioner time to return to state court to present unexhausted claims.").

The Ninth Circuit recently addressed the issue of what constitutes "good cause" in the context of a potential stay under Rhines:

> There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust. In Rhines, the Supreme Court did not explain the standard with precision. See 544 U.S. at 275-78. The Court has since addressed the meaning of good cause in only one other case, recognizing in dicta that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" to excuse his failure to exhaust. Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) (citing Rhines, 544 U.S. at 278).
>
> Similarly, our cases on the meaning of good cause under Rhines are also sparse. In Jackson v. Roe, 425 F.3d 654 (9th Cir. 2005), we held that good cause does not require a showing of "extraordinary circumstances." Id. at 661-62. In Wooten v. Kirkland, 540 F.3d 1019 (9th Cir. 2008), we held that a petitioner did not establish good cause simply by alleging that he was "under the impression" that his claim was exhausted. Id. at 1024. We explained that accepting as good cause the mere "lack of knowledge" that a claim was exhausted "would render stay-and-abey orders routine" because "virtually every habeas petitioner" represented by counsel could assert that he was unaware of his attorney's failure to exhaust. Id.

Blake v. Baker, 745 F.3d 977, 981-82 (9th Cir. 2014). "An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure to exhaust." Id. at 982. Ultimately, the Ninth Circuit concluded that the Rhines standard for cause based on ineffective assistance of counsel "cannot be any more demanding" than the cause standard required to excuse the procedural default of a habeas claim, as set forth in Martinez v. Ryan, 132 S. Ct. 1309 (2012). Blake, 745 F.3d at 983-84.

////

A petitioner who proceeds under Rhines can, in many instances, avoid a statute of limitations problem with respect to his unexhausted claims. See King, 564 F.3d at 1140. However, the requirements for the granting of a stay under Rhines are more stringent than those under Kelly. The Supreme Court has cautioned that a "stay and abeyance [under the Rhines procedure] should be available only in limited circumstances." Rhines, 544 U.S. at 277.

The decisions in both Kelly and Rhines "are directed at solving the same problem – namely, the interplay between AEDPA's one-year statute of limitations and the total exhaustion requirement first articulated in Rose v. Lundy, 455 U.S. 509 (1982)." King, 564 F.3d at 1136.

III. Analysis

Petitioner moves for a stay under Rhines so that he can exhaust state court remedies regarding three unexhausted claims: (i) ineffective assistance of trial counsel for failing to move to suppress the results of an unduly-suggestive identification procedure; (ii) ineffective assistance of trial counsel for failing to challenge a juror for cause; and (iii) insufficient evidence to support petitioner's conviction for active participation in a street gang.

      1. Ineffective assistance of trial counsel for failing to bring motion to suppress

Petitioner alleges ineffective assistance of trial counsel for failure to move to suppress the results of an unduly-suggestive identification procedure. (FAP, ECF No. 31 at 35-48.) As noted above, this claim was denied by the San Joaquin Superior Court on the grounds that it should have been raised on direct appeal.

      A. Good cause

Petitioner contends that he had good cause for failing to exhaust this claim due to ineffective assistance of appellate counsel. Ineffective assistance of appellate counsel has repeatedly been found to constitute good cause for a Rhines stay. See, e.g., Riner v. Crawford, 415 F. Supp. 2d 1207, 1209-10 (D. Nev. 2006) ("[T]he good cause standard . . . requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's

existence."); Medina v. Woodford, No. C-06-2480-JF, 2006 WL 2844578 (N.D. Cal. Oct. 2, 2006) ("The Court also concludes that ineffective assistance of appellate counsel is a circumstance over which petitioner had little or no control, thus satisfying the [good cause] standard"); Redic v. Marshall, No. C 08–5010 MHP, 2009 WL 585843 (N.D. Cal. 2009) (finding good cause for a stay under Rhines "because [petitioner's] appellate attorney did not include the claims in the appellate brief"); Abel v. Chavez, No. 2:11-cv-0721-GEB-GGH, 2011 WL 4928689 (E.D. Cal. Oct. 17, 2011) (finding good cause for a Rhines stay where appellate counsel failed to raise claims); Wright v. LeGrand, No. 3:12–CV–00286–MMD–VPC, 2014 WL 3428487 (D. Nev. Jul. 10, 2014) ("A petitioner demonstrates . . . good cause . . . if he failed to exhaust a claim of ineffective assistance of counsel due to an absence of effective assistance of counsel in the state post-conviction proceedings.").

As evidence of appellate counsel's omissions in this regard, petitioner points to a letter from appellate counsel, dated September 22, 2010, which provides in pertinent part:

> As for the issues you [i.e., petitioner] outlined in your letter, I understand them and considered them carefully before filing the opening brief in your case. Either the issues you raised weren't adequately presented or preserved in the record or could not be raised because they involved facts which were resolved against you by the jury, or were required to be raised in what is called a petition for writ of habeas corpus because they involved facts outside the four corners of the record on appeal. Typically, claims of ineffective assistance of counsel must be raised in a petition for writ of habeas corpus.

(ECF No. 31-4 at 2.) Many of the assertions in this letter are flatly contradicted by the San Joaquin Superior Court's February 16, 2011 order, which provides in pertinent part that "[t]he identification procedure . . . was within the record on appeal" and justified denial of the petition under "the general rule that a court will dismiss a habeas petition if it alleges an issue that could have been, but was not raised, on direct appeal." (ECF No. 13 at 18.)  It appears reasonable to infer from the incorrect assertions in counsel's letter and the substance of the Superior Court's denial that among the issues petitioner asked his appellate counsel to raise on direct appeal was trial counsel's failure to bring the motion to suppress the identification procedure.

////

Respondent disagrees with petitioner's contention that he had good cause for failing to exhaust this claim, arguing instead that petitioner's appellate counsel made a reasoned decision to omit the arguments in question. Respondent writes, "Appellate counsel had to know direct review was strictly confined to the appellate record, which means an appellate attack on trial counsel's failure to litigate a point is nearly always a complete waste of time." (Opposition, ECF No. 45 at 3.) But respondent is merely positing a hypothetical justification for appellate counsel's omissions, one that is refuted by the Superior Court's order, which explains that the basis for petitioner's claim in fact did lie within the trial record.

Respondent similarly argues that "[t]here is no logic to a theory of ineffective appellate counsel, and much less a causal relation between (a) an alleged failing by appellate counsel and (b) Petitioner's own failure to file a state habeas petition raising a claim of ineffective trial counsel." (Id.) This argument does not conform to the evidence adduced by petitioner, which appears to demonstrate that appellate counsel failed to raise the issue on direct appeal, and that petitioner's efforts to raise it on habeas were therefore doomed. Moreover, as set forth in the orders cited above, the "logic" of a theory of ineffective assistance of appellate counsel has been recognized by numerous district courts.

As for respondent's argument that petitioner should have "challenged [his] appellate counsel's conduct in the California Supreme Court, when he himself was pursuing state habeas relief," (id. at 9), respondent here conflates (i) the issue of whether ineffective assistance of appellate counsel constitutes "good cause" under Rhines for failing to exhaust state remedies as to a claim with (ii) the issue of petitioner's failure to exhaust the merits of a freestanding ineffective assistance of appellate counsel claim. The latter issue is not before the court. As noted above, the Ninth Circuit has held that the cause standard for a stay under Rhines "cannot be any more demanding" than the cause standard required to excuse a procedurally-defaulted claim. Blake, 745 F.3d at 983-84. Per the Supreme Court:

> [Petitioner] relies on the ineffectiveness of his postconviction attorney to excuse his failure to comply with Arizona's procedural rules, not as an independent basis for overturning his conviction. In short, while [AEDPA] precludes [petitioner] from relying on the ineffectiveness of his postconviction attorney as a "ground for

10

relief," it does not stop [petitioner] from using it to establish "cause."

Martinez, 132 S. Ct at 1320.  Similarly, petitioner herein is citing his appellate counsel's alleged ineffectiveness as a basis for good cause for a stay, rather than as a substantive basis for habeas relief.  Respondent's argument on this point is therefore unavailing.

Accordingly, it appears that petitioner has demonstrated good cause for failing to properly exhaust the issue of ineffective assistance of trial counsel for failure to bring a motion to suppress.

### B. Potential merit

Petitioner contends that this claim is potentially meritorious.  According to the First Amended Petition, the procedure that led to the identification of petitioner was unlawful in that, despite the victim's description of one of the individuals who had accosted him as "Hispanic, approximately 5' 8" and [bearing] tattoos" (FAP, ECF No. 31 at 36), the six-photo lineup with which the victim was presented "included only one other photograph of a Hispanic male with tattoos" (id. at 38).  Petitioner notes that his identification from this lineup was the only evidence that connected him to the crime, a fact that is acknowledged by his trial counsel.  (Id. at 38-9.)  Yet trial counsel failed to move to suppress the identification evidence and also failed to object to its introduction at trial.  (Id. at 39.)

Respondent argues that the claim of ineffective assistance of counsel is meritless on the grounds that "[p]etitioner simply *does not know* what were the facts that trial counsel faced." (Opposition, ECF No. 45 at 5) (emphasis in original).  Respondent relies on Burt v. Titlow, 134 S. Ct. 10, 17 (2013) for the proposition that "a present 'absence of evidence' that trial counsel had a good reason is not itself affirmative evidence trial counsel in fact had no good reason years ago."  (ECF No. 45 at 5.)  The passage in Burt cited by respondent concerns a finding by the Sixth Circuit that trial counsel was ineffective "because the record in th[e] case contain[ed] no evidence that [counsel] gave constitutionally adequate advice on whether to withdraw [a] guilty plea."  Id. at 17 (internal quotation omitted).  The Supreme Court disagreed with this finding, on the basis that "counsel 'should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' and that the

11

burden to 'show that counsel's performance was deficient' rests squarely on the defendant." Id. (quoting Strickland v. Washington, 466 U.S. 668 (1984)).

Respondent's argument is inapt. Though both issues sound in the Sixth Amendment right to counsel, the adequacy (or lack thereof) of advice regarding a plea bargain is quite different from the soundness of the decision to forego a motion to suppress.

The Supreme Court has explained the merit requirement under Rhines as follows:

> [E]ven if a petitioner had good cause for that failure [to exhaust claims in state court], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Rhines, 544 U.S. at 277. The Ninth Circuit, in turn, has held that a district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623–24 (9th Cir. 2005).

Under Supreme Court precedent, "a single, serious error may support a claim of ineffective assistance of counsel." Kimmelman v. Morrison, 477 U.S. 365, 383 (1986) (holding that an ineffective assistance of counsel claim may be grounded on a failure to bring a motion to suppress). A number of lower courts have subsequently found ineffective assistance of counsel based on the failure to bring a suppression motion. See, e.g., Northrop v. Trippett, 265 F.3d 372 (6th Cir. 2001) (affirming district court's finding of Sixth Amendment violation based on trial counsel's failure to bring motion to suppress); Owens v. United States, 387 F.3d 607 (7th Cir. 2004) (reversing district court's determination that failure to bring motion to suppress did not constitute ineffective assistance of counsel); U.S. v. Wendfeldt, No. 3:11–CR–00094–LRH–VPC, __ F. Supp. 3d __, 2014 WL 5822804 (D. Nev. Nov. 7, 2014) ("In light of the sparse evidence against [petitioner] absent the traffic stop and long sentence that [petitioner] faced if convicted, failure to file a motion to suppress was objectively unreasonable and constituted ineffective assistance of counsel under § 2255.").

////

1   In light of these precedents, and particularly at this stage of the proceedings, it would be
2   premature for this court to rule that "it is perfectly clear that the applicant does not raise even a
3   colorable federal claim." Cassett, 406 F.3d at 623–24.  Certainly the passage from Burt, 134 S.
4   Ct. at 17, that respondent cites does not support such a determination.  Accordingly, the court
5   does not find petitioner's claim to be "plainly meritless" under Rhines.

        C.   Timeliness

Slightly more than eight months elapsed between the San Joaquin Superior Court's denial of plaintiff's habeas petition on February 16, 2011 and the docketing of his federal petition on October 31, 2011.  Despite this gap in time, the record suggests that petitioner was not dilatory in pursuing this case.

Appellate counsel apparently failed to give petitioner accurate advice about the statute of limitations and exhaustion requirements under AEDPA.  A letter from appellate counsel to petitioner, dated November 1, 2010 and attached as an exhibit to the First Amended Petition, provides in pertinent part:  "Any further appeals will have to be via petition for writ of habeas corpus either in the state or federal courts.  If you do not file any writ in the state court, you must file a writ in the federal court within one year of the date your case becomes final in state court." (ECF No. 31-4 at 3.)  Petitioner could have easily mistaken this advice for a requirement that he had one year from the date his direct appeal became final to file a petition in federal court. "Under the 'prison mailbox rule' . . . a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001) (citing Houston v. Lack, 487 U.S. 266 (1988)).  The California Supreme Court issued its summary denial of plaintiff's direct appeal on October 27, 2010.  The proof of service attached to petitioner's initial petition filed in federal court states that he served his federal petition on October 21, 2011 (ECF No. 1 at 58), just within the (incorrect) one-year "deadline" set forth by petitioner's appellate counsel in her letter.

These facts suggest that petitioner was not dilatory in filing his federal petition, but rather, believed in good faith that he was not dilatory in prosecuting his petition, based on the incorrect advice of his appellate counsel.

13

1    As petitioner has shown (i) good cause for his failure to exhaust a claim of ineffective
2  assistance of trial counsel, (ii) that this claim is potentially meritorious, and (iii) that he was not
3  dilatory in pursuing this claim, he will be granted a Rhines stay as to this claim.

4         2.   Ineffective assistance of trial counsel for failing to challenge juror for cause

5    Petitioner also seeks habeas relief based on ineffective assistance of trial counsel in failing
6  to move to strike Juror No. 5 for cause.  (FAP, ECF No. 31 at 48-56.)  Petitioner failed to raise
7  this issue in either his direct appeal or in his state habeas petition, raising it for the first time in his
8  federal petition.

9    Petitioner again attributes this omission to ineffective assistance of appellate counsel,
10 asserting that his "appointed state appellate counsel declined to present the claims on direct
11 appeal, despite Petitioner's repeated requests."  (Motion, ECF No. 44 at 6.)  Petitioner cites letters
12 from his appellate counsel as evidence of her ineffectiveness in this regard; these are the same
13 letters that petitioner relied upon to demonstrate good cause for having not exhausted the issue of
14 his trial counsel's failure to bring a motion to suppress the identification procedure.

15   However, petitioner's evidence fails to demonstrate that he had good cause for failing to
16 exhaust the instant claim.  The court was willing to infer, from the content of one of appellate
17 counsel's letters and the substance of the San Joaquin Superior Court's denial, that appellate
18 counsel erred in failing to raise the issue of the identification procedure on direct appeal despite
19 plaintiff's request that she do so.  By contrast, there is an insufficient basis in the record to infer
20 that petitioner requested his appellate counsel raise the claim regarding the juror on direct appeal.
21 The fact that petitioner also failed to raise this issue in his habeas petition filed with the San
22 Joaquin Superior Court (in contrast with the claim of ineffective assistance of counsel discussed
23 above) suggests that petitioner may have first thought to raise the issue in his federal petition.[2]
24 As respondent observes, "[F]ocusing on the superior court denial of a petition which did not
25 include a claim of ineffective assistance of trial counsel cannot possibly show good cause for

---

[2] Even if the court were to find that plaintiff had good cause, due to ineffective assistance of appellate counsel, for failing to exhaust this claim, it would nonetheless likely deny petitioner a stay on the grounds that, in omitting this claim from his state habeas petition, petitioner was unduly dilatory, and therefore unable to satisfy the third prong of the Rhines test.

failure to have included such a claim in the first instance." (Opposition, ECF No. 45 at 6.) On the evidence presented, such an omission cannot be attributed to appellate counsel.

The Ninth Circuit has made clear that "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure." Blake, 745 F.3d at 982. Petitioner has failed to adduce sufficient evidence to explain why he did not raise the juror issue in his state habeas petition. Accordingly, he has failed to demonstrate good cause for failing to exhaust this claim at the state level, and must be denied a stay with respect to this claim.

### 3. Insufficient evidence to support petitioner's conviction for active participation in a street gang

Petitioner also seeks habeas relief based on a claim that there was insufficient evidence to support his conviction for active participation in a street gang. (FAP, ECF No. 31 at 62-65.) As noted above, this claim was denied by the San Joaquin Superior Court on the grounds that it should have been raised on direct appeal.

#### A. Good cause

Petitioner contends that he had good cause for failing to exhaust this claim based on ineffective assistance of appellate counsel. For reasons similar to those set forth above in the discussion of petitioner's first unexhausted claim, the court finds that petitioner has demonstrated good cause due to the ineffectiveness of his appellate counsel. Appellate counsel's letter provides:

> As for the issues you outlined in your letter, I understand them and considered them carefully before filing the opening brief in your case. Either the issues you raised weren't adequately presented or preserved in the record or could not be raised because they involved facts which were resolved against you by the jury, or were required to be raised in what is called a petition for writ of habeas corpus because they involved facts outside the four corners of the record on appeal.

(ECF No. 31-4 at 2.) The San Joaquin Superior Court's order denying petitioner's habeas petition provides: "Petitioner's latter claims relating to the sufficiency of the evidence . . . fail because they are not within the scope of the habeas corpus remedy. Habeas corpus is not available to re-litigate factual matters determined adversely to petitioner or to weight the evidence supporting the

judgment." (ECF No. 13 at 18.) The court finds an adequate basis in these documents to infer that petitioner asked his appellate counsel to raise the sufficiency issue on direct appeal, and that she failed to do so. As discussed above, ineffective assistance of appellate counsel is a basis for finding good cause for a stay under Rhines.

### B. Potential merit

The issue, then, is whether a Rhines stay is unwarranted because petitioner's claim of insufficient evidence is plainly meritless.

Petitioner argues that the only evidence introduced at trial to support a finding of petitioner's active participation in a gang at or near the time of the charged incident was a tattoo that had not previously been documented by the testifying detective. (Motion, ECF No. 44 at 10-11.) This fact was noted by the California Court of Appeal in its unpublished decision. See Estrada, 2010 WL 3247866 at *2 ("Defendant told the officer that he was not an active gang member in August 2008, and the officer could not document any evidence of active gang membership since March 2007 other than the addition of a tattoo."). Petitioner contends that the tattoo was insufficient evidence for a conviction under Cal. Penal Code § 186.22(a).

Both parties agree that in order to be convicted under Cal. Penal Code § 186.22(a), "A defendant's active participation must be shown at or reasonably near the time of the crime." People v. Garcia, 153 Cal. App. 4th 1499, 1509 (2007).

Respondent cites to the record in an attempt to demonstrate that there was sufficient evidence to find petitioner guilty under Cal. Penal Code § 186.22(a). However, much of the material that respondent cites is probative of active participation in a gang only if it is assumed that petitioner was in fact guilty of the crime of dissuading a witness by force or threat of force. For example, respondent writes:

> [O]n August 17, 2008, in a twosome, Petitioner threatened that harm could befall the victim if he testified against the foursome. […] Petitioner's words indicated he had a safeguarding role – he said the prior assailants "already had issues with the court, they don't need to be going back to court." And Petitioner indicated his authority, by pronouncing that if the victim declined to testify, then nothing would happen to the victim, "the whole incident with them would be dropped and everything would be quashed." […] Per the expert, by threatening the victim Petitioner promoted fear of the

> gang in the neighborhood, i.e., the act itself was an active effort on behalf of the gang.

(Opposition, ECF No. 45 at 8) (internal citations to record omitted).  It would be illogical for the court, in assessing the potential merits of a claim that petitioner was wrongly convicted of a crime, to assume that petitioner is guilty of that crime.  To the extent that respondent's arguments are based on an assumption of petitioner's guilt, then, they are unpersuasive.

At other points, respondent cites petitioner's prior gang involvement, writing, "Petitioner associated with gang members . . . . " (Opposition, ECF No. 45 at 8) (internal citations to record omitted).  But such evidence, again, does not show petitioner's "active participation . . . at or reasonably near the time of the crime."  Garcia, 153 Cal. App. 4th at 1509.  Petitioner does not dispute that he was an active gang member in 1998 and 1999, stating as much in his First Amended Petition.  (ECF No. 31 at 23.)

The court has also reviewed portions of the trial transcript cited by respondent and finds that they do not stand for the propositions advanced in respondent's opposition.  For example, respondent writes, "A gang expert confirmed Petitioner was a shot caller for the gang.  (RT at 202.)"  (Opposition, ECF No. 45 at 8.)  The cited portion of the trial transcript provides:

> Q. Do you believe that [petitioner] is a short caller of the Ripon Varrios Locos?
> A. Yes.

(RT at 202, Lod. Doc. 3.)  A witness's expression of belief in a fact is not confirmation of that fact.

Respondent similarly relies on a detective's testimony that the detective had seen petitioner at "an active gang safe house" in the year before trial.  (Opposition, ECF No. 45 at 8.) But the detective also testified that one Jose Luna lived at the house in question, and that to his knowledge, Mr. Luna was not a documented gang member.  (RT at 191, Lod. Doc. 3.)  Jose Luna is the individual who came forward to assert that petitioner was not present at the scene of the crime, and on whose interview petitioner relies upon for his claim of actual innocence.  (See ECF No. 31-1.)  In the interview transcript provided by petitioner, Mr. Luna states that he was

17

petitioner's boss (id. at 4) and that petitioner would come over to his house for "bbq's and stuff like that" (id. at 6).[3]  Therefore, the fact that petitioner was present at the house in question does not necessarily mean that he was an active gang member.

In short, having considered respondent's arguments, and having reviewed the record as a whole, the court cannot say that petitioner's arguments regarding the insufficiency of the evidence used to convict him of active participation in a street gang are "plainly meritless." Rhines, 544 U.S. 277.

### C.  Timeliness

For the reasons set forth above in the discussion of petitioner's first unexhausted claim, the court finds that petitioner has also not been dilatory in pursuing his insufficient evidence claim.  Petitioner's appellate counsel provided him with ambiguous and erroneous advice regarding the deadlines for filing a habeas petition.  The court will not fault petitioner for attempting to comply with that advice.

As petitioner has shown (i) good cause for his failure to exhaust a claim of insufficient evidence of active participation in a street gang, (ii) that this claim is potentially meritorious, and (iii) that he was not dilatory in pursuing this claim, he will be granted a Rhines stay as to this claim.

## IV.  Conclusion

In light of the foregoing, IT IS HEREBY ORDERED that:

1. Petitioner's motion for stay (ECF No. 44) is granted as to his first claim (for ineffective assistance of trial counsel based on a failure to move to suppress the identification procedure) and third claim (for insufficient evidence of active gang participation), and denied as to his second claim (for ineffective assistance of trial counsel based on a failure to challenge a juror for cause).
2. Petitioner is directed to file a motion to lift the stay of this action within thirty days from the date on which the California Supreme Court issues an order addressing

---

[3] As noted above, trial counsel did not become aware of Mr. Luna's version of events until well after trial had concluded.

1  petitioner's habeas petition.

2     3.  The Clerk of the Court is directed to term this case.

3  Dated:  April 27, 2015

*[signature: Kendall J. Newman]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/estr2871.stay